# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>*ex rel*, MICHAEL WILSON, )<br>    Plaintiff, )<br>    )<br>v. )<br>    )<br>BRISTOL MYERS SQUIBB, INC., )<br>JOHN DOES 1-10, and, )<br>SANOFI-AVENTIS U.S. LLC, )<br>    Defendants. ) | Civil Action No. 06cv12195-NG |

GERTNER, D.J.

### MEMORANDUM AND ORDER RE: MOTION TO AMEND RELATOR'S MOTION FOR LEAVE TO AMEND AND FILE A THIRD AMENDED COMPLAINT
June 16, 2011

Pursuant to the qui tam provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730[1], plaintiff-relator Michael Wilson ("Wilson") sues co-defendants Bristol-Myers Squibb, Inc. ("BMS") and Sanofi-Aventis ("Sanofi") for employing fraudulent and illegal practices in connection with the marketing of various drugs. Specifically, Wilson alleges that, during the eight years BMS employed him as a sales representative, defendants violated the FCA by engaging in a scheme to promote and market off-label prescriptions of certain medications. As a direct result of this alleged scheme, and the false claims for Medicaid reimbursement they generated, the United States and the various other states suffered monetary damages.

At issue is Wilson's fourth effort to amend his complaint, an amendment that seeks to add a second relator, Lucius O. Allen, Jr. ("Allen") and to substantially expand the allegations based on Allen's knowledge.

---

[1] Held unconstitutional as not severable, a ground unrelated to this action. <u>Florida ex rel. Bondi v. United States Dept. of Health and Human Servs.</u>, 2011 WL 285683, at *1 (N.D.Fla. Jan 31, 2011).

This case has had an unusual trajectory. Wilson filed his original complaint almost five years ago in September 2006 in the District Court for the Central District of California, a complaint which he then amended. The case was transferred to this Court, where Wilson and BMS immediately entered into a settlement agreement, apparently dismissing all claims except those related to off-label promotion, retaliation and wrongful termination, to the extent they were specifically alleged in the original complaint. On October 22, 2008, the government declined to intervene (document #29) at which point the complaint was unsealed and served on defendant.

On April 9, 2009, Wilson filed his Second Amended Complaint ("SAC") (document #39), adding Sanofi as a new defendant. Since Wilson indicated that he would seek to further amend the SAC because he was obtaining new counsel, the parties agreed that the defendants need not answer the Second Complaint. Accordingly, Wilson moved to file a third amended complaint ("TAC")(document #60-1), adding Allen and a host of new allegations. In particular, Wilson claims that the TAC will clarify defendants' fraudulent schemes with respect to the promotion of their pharmaceutical drugs Plavix, Pravachol, and Monopril.

In order to amend, Wilson must satisfy both Rule 15 of the Federal Rule of Civil Procedure ("Rule 15") and the FCA. Since this complaint has already been amended once, as of right, further amendment is discretionary, precluded if there is "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). While I am quite concerned about the delay and prejudice to the defendants in this, the fourth round of amendments, those concerns pale in comparison to the problems under the FCA.

The FCA is intended to deter the submission of false or fraudulent claims to the government. It imposes liability on any person who "knowingly presents, or causes to be presented, [to the United States Government] a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729 (a)(1)(A). While the Act authorizes private individuals, known as relators, to bring qui tam actions on behalf of the United States government, the procedural requirements are strict. 31 U.S.C. § 3730(b). The relator must, for example, serve a copy of the complaint and disclose substantially all material evidence in the plaintiff's possession to the federal government. Id. § 3730(b)(2). Upon receipt of the complaint, the government may investigate the claims and elect to intervene. During the period of investigation, the plaintiff's complaint remains under seal. If the government declines to intervene- as here- the complaint is unsealed and the relator may proceed on his own.

In order to discourage "parasitic" or "piggy back" lawsuits, whose suits rest on information already in the public domain, Congress added a new jurisdictional provision to the FCA.[2] A qui tam suit may be dismissed for lack of jurisdiction if the allegations in the FCA complaint have been previously disclosed publicly or if the lawsuit is based on the publicly disclosed information, the "public disclosure" bar. A qui tam action is "based upon" public disclosure if the action is "supported by" or is "substantially identical" to the publicly disclosed information. United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 552-53 (10th Cir. 1992).

---

[2] In United States ex rel. Precision Company v. Koch Industries, Inc., 971 F. 2d 548, 552 (10th Cir. 1992)(*Koch I), cert. denied*, 507 U.S. 951 (1993), the Court noted that the purpose of the public disclosure bar is "to avoid civil actions by opportunists attempting to capitalize on public information without seriously contributing to the disclosure of the fraud."

To be sure, there is an exception. Even if the allegations in the lawsuit are based upon publicly disclosed information, the relator is not barred from bringing a qui tam action if he or she is the "original source" of that information. The FCA defines an "original source" as "an individual who either prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

Along the same lines is the "first to file" rule, which like the public disclosure bar, is intended to discourage opportunistic piggy back actions. It bars belatedly-filed qui tam suits that are based on the same facts as those made in the already pending action. 31 U.S.C. § 3730(b)(5) provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."

There are allegations in the TAC in this case that are the same as the first complaint, and aspects that are different. As defendants persuasively argue, to the extent that the TAC adds Allen as a new relator to pursue allegations that are *the same as* Wilson's, it violates the "public disclosure" bar or the "first-to-file" bar. Allen has not alleged that he is the original source of the information underlying Wilson's complaint. Nor has Allen shown why the bar to intervention in an existing suit, the "first to file" rule should not apply to him. To the extent that the TAC raises *different* allegations it violates the qui tam filing and service requirements. Since there is no question that the TAC has elements of both – the same as the TAC and different from the TAC, I

**DENY** Wilson's Motion to Amend Relator's Motion for Leave to Amend and File a Third Amended Complaint **(document #60).**

## I.　BACKGROUND

### A.　The Action

Wilson was employed by BMS for over six years, from January 1998 to September 2004. He was first employed as a Pharmaceutical Sales Representative ("PBR") and was later promoted to Territory Business Manager ("TBM"). Wilson claimed to have learned about an alleged scheme involving fraudulent and illegal practices in connection with the marketing of various drugs during his employment. He learned that BMS and Sanofi actively encouraged doctors whose patient populations were mainly insured by Medicaid to prescribe Plavix, Pravachol, and Monopril for non-approved, "off-label" uses.[3] SAC ¶ 18. Since Medicaid prescription coverage is generally limited to drugs prescribed for FDA-approved, on-label uses, id. ¶ 14-17, these drugs were ineligible for reimbursement from the federal or state Medicaid programs. Nevertheless, BMS and Sanofi allegedly caused physicians to submit claims for them that did not disclose their real uses, and as such were false claims under the FCA. SAC ¶¶ 19, 20 and 21. Had the agencies known the true facts, the complaint alleged, they would not have reimbursed the claims. Id. ¶ 17.

---

[3] The Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 355, governs the lawful interstate distribution of drugs for human use. The FDCA and its implementing regulations require that, before a new drug may be distributed in interstate commerce, a sponsor of a new drug product must submit a New Drug Application ("NDA"), which includes a proposed label for the intended uses. FAC ¶¶ 9-10. The FDCA prohibits the introduction into interstate commerce of any new drug unless an approval of an NDA is effective. Id. ¶¶ 11. Only after the NDA is approved by the Food and Drug Administration ("FDA") may the drug sponsor promote and market the drug. Id. Uses not approved by the FDA and not included in the drug's approved labeling are called "off-label" uses. In order to label or promote a drug for a use different from the conditions for use specified in the approved labeling, the sponsor has to file a new NDA or amend the existing NDA. Id. ¶¶ 12.

In order to use physicians to further this scheme, BMS and/or Sanofi sponsored and promoted off-label research of Plavix, Pravachol and Monopril; trained their sales representatives to promote off-label prescriptions; and promoted off-label prescribing at continuing medical education programs.  Id. ¶¶ 22-129.  In fact, despite receiving an official warning letter from the FDA, requiring that BMS cease their deceptive marketing practices, Wilson and other representatives supposedly received orders from their superiors at BMS to continue to market the drugs unlawfully.  TAC ¶¶ 241-44.[4]  In order to gain the confidence of doctors, BMS allegedly made claims about the safety and efficacy of certain off-label uses of the drugs that were alleged to be false.  Relying on the false representations made by BMS, the doctors then wrote prescriptions that were neither medically necessary nor proven to be the appropriate treatment in the cases before them.

    **B.**    **Case History and the Amended Complaints**

This case was filed more than four years ago.  To date, three complaints have been filed, with a fourth (the TAC) at issue in the current Motion to Amend.  Since the defendants' opposition to the TAC hinges on its relationship to the already-filed complaint, it is critical to evaluate each of the complaints.

    **1.**    **The Original and First Amended Complaint**

In September 2006, Wilson filed his Original Complaint, under seal, after providing a full disclosure of substantially all material facts as required by the FCA and the relevant state statutes.  The complaint was against BMS and John Does 1-10 only.  It was filed in the District Court for the Central District of California.  In October 2006, Wilson filed a First Amended

---

[4] Despite reference to allegations in the TAC, it is important to note that the TAC is at issue in this current Motion to Amend.

Complaint ("FAC"), also under seal and with proper disclosure, in that court. The FAC also names BMS and John Does 1-10 as the defendants, as described above. The FAC alleges that BMS actively encouraged doctors to prescribe Plavix, Pravachol and Monpril for uses that were not approved and were therefore "off-label," and that the company focused on promoting off-label prescriptions among doctors whose patients were comprised mostly of Medicaid subscribers. As a result, BMS caused physicians to submit prescriptions for these drugs that were ineligible for reimbursement under the federal Medicaid program, Medi-Cal and other state Medicaid programs. Wilson alleges that BMS continued to promote off-label use of these drugs despite FDA warnings and sought to hide their scheme from physicians by various means. The complaint details the methods that BMS used to pursue this scheme including off label research, continuing medical education programs, gifts and lavish events for high prescribing physicians and as well as kickbacks. Wilson alleges that after he complained about BMS' off-label marketing they retaliated against him for his complaints which resulted in his wrongful termination.

The case was transferred to this Court, where Wilson and BMS entered into a settlement agreement with a Notice of Voluntary Dismissal with Prejudice (document #17), accepted by this Court on September 28, 2007 (document #18). Pursuant to the agreement, Wilson released the defendants from all claims, except those from the operative complaint that were specifically identified in the settlement agreement.

At the time of the settlement, the original complaint and FAC remained under seal pending completion of the Department of Justice's ("DOJ's") investigation of the FCA allegations that Wilson had not resolved in the September settlement. On October 22, 2008,

however, the DOJ decided not to intervene (document #29). At that point, this Court ordered that the complaint be unsealed and served upon the defendant.

### 2. The Second Amended Complaint

On April 9, 2009, Wilson filed a SAC under seal, adding Sanofi as a new defendant, three years after Wilson filed his Original Complaint. Wilson made additional allegations against BMS. He claims that BMS promoted Pravachol for off label use in patients with diabetes and/or insulin resistance syndrome to prevent cardiac events, maintaining that it was more effective and safer than statins for transplant patients. Specifically, BMS promoted Plavix off-label for use in diabetics, as a substitute for the drug Pletal in treating numbing, tingling, and claudication associated with peripheral arterial disease. BMS further represented that Plavix, in association with aspirin, prevented future cardiac events. In addition, Wilson maintained that BMS marketed Monopril as superior to other ACE inhibitors for treating hypertension in patients with renal dysfunction or kidney disease.

BMS promoted these off-label uses by implementing four specifics methods – sponsoring and promoting off-label research, training sales representatives, representations made during continuing medical education programs and BMS's directions to its sales representatives to assist physicians filling out Medicaid treatment authorization requests in their offices. Furthermore, Wilson repeats his claim against BMS for retaliation and wrongful termination in connection with his discharge.

With regard to Sanofi, the SAC alleges the company pursued the same scheme as BMS did but only with regard to Plavix.

### 3. The Proposed Third Amended Complaint

Since Wilson indicated his intention to seek leave to further amend the SAC, the parties agreed that it would be an unnecessary expense/burden for defendants to answer it. The parties proposed, and the Court agreed, that Wilson be permitted to file a third amended complaint ("TAC")(document #53), to which the pleadings would be directed. On June 24, 2010, Wilson filed his Motion to Amend Relator's Motion for Leave to Amend and File a Third Amended Complaint (document #60), which both defendants opposed.

The proposed TAC seeks to add Allen as a relator and expands the factual allegations supporting Wilson's FCA and State False Claims Acts claims. The TAC, like the SAC, alleges that BMS improperly engaged in off label promotion of Plavix, Pravachol, and Monopril, including through the same promotional and training programs. The TAC also alleges the same retaliation and wrongful termination claim by Wilson as stated in the SAC.

The major substantive difference between the SAC and the TAC is that in the SAC Wilson alleges that Sanofi pursued this scheme with regard to Plavix, while the TAC now alleges that Sanofi pursued this scheme with regard to *all* of the medications at issue. The additional allegations against Sanofi are supposedly based on information gleaned from the proposed relator, Allen. According to the proposed TAC, Allen was a BMS Territory Business Manager ("TBM") assigned to the Los Angeles cardiovascular market from 1997-1999 and a BMS Cardiovascular and Metabolic Risk Specialist ("CMRS") until he left in 2003.

The proposed TAC also adds a number of new allegations in connection with BMS, again deriving from Allen's supposedly new information. For example, it alleges a scheme called the "Cross-Risk Imperative," in which BMS and Sanofi directed their employees to promote Plavix,

Pravachol, and Monopril interchangeably and/or in combination to patients who satisfied a "risk profile" even in the absence of an actual disease.

Since the TAC followed the government's decision not to intervene, it was not filed under seal. It does not allege that Allen provided his information to the government prior to Wilson's original complaint; or that Allen served substantially all material evidence and information that he possesses on the Government in connection with the proposed TAC.

## II. ISSUES IN THE MOTION FOR LEAVE TO AMEND

Wilson's motion for leave to amend and file a third amended complaint raises two issues. First, does the TAC meet the requirements of Rule 15 under the Federal Rules of Civil Procedure. Second, even if Rule 15 permits it, is the amendment futile because it fails to comply with the FCA.

### A. Federal Rule of Civil Procedure 15

Wilson filed his original complaint on September 22, 2006, and later filed his FAC on October 25, 2006. Since the defendants have never answered any of the complaints, Wilson initially maintained that he was still entitled to amend the complaint "as of right" without a court order or the parties consent. He is in error, and has conceded as much.

The TAC requires leave of court which depends upon whether "there is undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." United States ex rel. Gange v. City of Worcester, 565 F. 3d 40, 48 (1st Cir. 2009) (citing Foman v. Davis, 371 U.S. at 182).

The First Circuit has held that when a considerable period of time has elapsed between the filing of a complaint and the motion to amend, the burden is on the movant to show a valid reason for the delay. United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 734-35 (1st Cir. 2007); see also Hayes v. New England Millwork Distributers, Inc., 602 F.2d 15, 19-20 (1st Cir. 1979). The SAC, which for the first time added Sanofi, was almost three years after the initial complaint; the TAC a few months after it. The delay is troubling, and Wilson has not adequately explained it. Indeed, it smacks of an eleventh hour attempt to resurrect a case that the federal and state governments have rejected – in the sense that they declined to litigate. More significant, it seems to be an attempted end run around the requirements of the FCA.

An amendment may also be rejected as futile. Here, the TAC may well be jurisdictionally barred by the "public disclosure" and/or "first to file" requirements of the FCA. I will analyze each in turn.

### B. FCA Requirements

As noted above, defendants claim that to the extent that the TAC adds Allen as a relator to pursue allegations that are *the same as* Wilson's, it violates the "public disclosure" bar or the "first-to-file" bar. To the extent that the TAC raises *different* allegations whomever the relator is, not found in the Wilson complaint and previously not disclosed to the government, it violates the qui tam filing and service requirements.

#### 1. Filing and Service Requirements

The FCA imposes certain requirements on a relator, including that the complaint be filed under seal, that the relator serve a copy of the complaint and a written disclosure of substantially all material evidence and information the person possesses on the government, and that the

government have an opportunity to decline or to intervene after investigating the relator's accusations. 31 U.S.C. § 3730(b)(2). United States ex rel. Pilon v. Martin Matietta Corp., 60 F.3d 995, 998-99 (2nd Cir. 1995); see also, United States ex rel. Summer v. LHC Group Inc., 2009 WL 165103, at *6 (M.D. Tenn. June 11, 2009)(relator's failure to comply with the statute deprives her of the ability to pursue the statutory remedy and incurable frustrates the underlying purpose of the procedural requirements.")

Wilson claims that the TAC does not have to comply. The government already had an opportunity to investigate while the case was under seal and had declined to intervene. So long as the amended complaint and the previous complaints are substantially similar, doing no more than elaborating on the issues that the government has already reviewed and on which the government based its decision to decline intervention, there should be no bar to filing.

I find that the allegations in the TAC are not substantially similar to those in the prior complaints: Notably, Wilson did not make allegations against Sanofi in either his Original Complaint or his FAC. In fact, Wilson did not add Sanofi as a defendant until almost three years after filing his Original Complaint. And obviously, as to Sanofi, Wilson never served the United States or made the required disclosures. Therefore, the United States' Declination of Invervention does not address the allegations against Sanofi.

Moreover, Wilson's proposed TAC adds a new relator, Allen, and new, additional allegations of false claims that appear to be based solely on Allen's knowledge. To list just a few: In the SAC Wilson alleged that Sanofi pursued a scheme with regard to Plavix only. In the TAC, Wilson and Allen now allege, presumably based on Allen's knowledge, that Sanofi pursued this scheme with regard to all of the medications. The language concerning a "cross-

risk imperative" is also entirely new, as is the allegation that the cross-risk imperative was promoted at training events, and in materials received by Allen, for use in metabolic syndromes. Discussion of the CHAMP protocol and its purported success in hospitals also appears for the first time, as is the allegation concerning the use of the ACCORD, NAVIGATOR and CHARISMA studies to support the claims. All the examples of specific doctors engaging in this scheme are new to the proposed TAC and presumably based on Allen's knowledge as a cardiovascular and metabolic risk specialist.

The inclusion of a new relator, as well as the new allegations, violates the FAC's filing and sealing provision and requires rejecting the proposed TAC.

### 2. Public Disclosure and Original Source

To the extent that the TAC tracks the previous complaints, it fails to comply with the public disclosure and original source requirements of the FCA. The courts may not consider qui tam actions premised on publicly available information, unless the relator is the original source of the information. That means that the relator has direct and independent knowledge of the information supporting the allegations, and voluntarily provides the information to the government before filing the action. 31 U.S.C. § 3730(e)(4)(B).

Every court that has addressed the issue of "public disclosure" has held that documents filed in court, including a qui tam plaintiff's complaint, are in the public forum. See, e.g., McKenzie v. Bell South Telecomm., Inc., 123 F.3d 935, 939 (6th Cir. 1997) (citing Fed. Recovery Servs., Inc. v. United States, 72 F.3d 447, 450 (5th Cir. 1995) ("Information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for purposes of section 3730(e)(4)(A)")); United

States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1350 (4th Cir. 1994); United States ex rel. Kennard v. Comstock Res., Inc., 363 F.3d 1039, 1043 (10th Cir. 2004); and United States ex rel. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1020 (9th Cir. 1999). A second relator cannot qualify as an original source if he did not provide his information to the government prior to the first relator's filing of the original complaint. United States ex rel. Duxbury v. Ortho Biotech Products, L.P., 579 F.3d 13, 21 (1st Cir. 2009).

Since Wilson's SAC was unsealed on August 31, 2009, the complaint was already in the public forum when Allen provided his additional allegations. Accordingly, Allen must show that he has both original knowledge of the underlying allegations and that he provided that information to the government before the suit was filed.

Allen alleges that he is an original source of his knowledge because he was employed by BMS from 1997 until 2003. During his employment, Allen developed personal knowledge of the illegal scheme described in the TAC. Allen's role is to substantiate claims Wilson has already alleged, as to which the government has declined, and provide additional allegations based on his personal knowledge; these are allegations that Wilson could not have known about but for Allen. To be an original source of this information, Allen must have provided the information based on his knowledge to the government before Wilson filed the Original Complaint. 31 U.S.C. § 3730(e)(4)(B).

Neither the motion for leave to amend nor the TAC asserts that Allen voluntarily disclosed his information to the government at any time, much less before Wilson's Original Complaint. In fact, in the TAC Wilson himself concedes that while "preparing the proposed TAC, [Wilson] and his counsel learned of a potential new relator in Lucius Allen." Mem. in

Support of Relator's Mot. For Leave to File a Third Am. Compl. at 4. (document #61). If Allen's information is "new" he has failed to disclose it to the government. If Allen's information is not new, it is based upon the public disclosure of Wilson's complaint. Either way, he is jurisdictionally barred from becoming a second relator in this suit. All claims based on Allen's knowledge would also be barred from the proposed TAC.

To be sure, plaintiff contends that Allen's allegations simply amplify and corroborate Wilson's, buttress his claims generally, and does so without running afoul of the FCA 's requirements. The first to file provision of the FCA has been held to bar intervention, except by the government. The provision states that "no person other than the government may **intervene or bring a related action** based on the facts underlying the pending action" (emphasis added). 31 U.S.C. § 3730(b)(5). On its face, § 3730(b)(5) substantially narrows the more permissive framework of the Federal Rules; under § 3730(b)(5) intervention by any one other than the government is simply barred. In contrast, Rule 24(b) gives the Court discretion to permit intervention on a "timely motion" so long as the party "has a claim or defense that shares with the main action a common question of law or fact."

The Tenth Circuit has held that "the addition of parties does not constitute intervention," so long as the parties are related to the original plaintiff. United States ex rel. Precision Co. v. Koch Indus. Inc., 31 F.3d 1015 (10th Cir. 1994).[5] The Court found that the term "intervention" was meant to prohibit "parties unrelated to the original plaintiff from joining the suit to assert a

---

[5] In reaching this conclusion, the Tenth Circuit looked to the legislative history of § 3730(b)(5). There, the Senate noted that the section was adopted to prevent "multiple separate suits based on identical facts and circumstances." S.Rep. No. 99-345, at ***23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5290.

claim based on the same facts relief upon by the original plaintiff." For related parties, the Court found, the proper framework was Rule 24(b)'s more permissive one.

But, as the defendants note, Koch II could be read to create a narrow exception to the first to file bar to permit the sole stockholders of a corporation to join the suit because they were *legally* related to the originally named corporation. Koch, 31 F.3d at 1017-18. Allen is surely not related to Wilson in the same way. In any event, while the First Circuit has not addressed the precise issue at stake here, it has held that the "first to file" rule is exception free. Duxbury, 579 F.3d at 33.

Even if the appropriate framework here is Rule 24(b) rather than the FCA, the outcome would be the same. Under Rule 24(b), I would have to determine if the proposed intervention "will unduly delay or prejudice the adjudication of the original parties' rights." This case is over six years old. The case has been investigated, portions of it settled, and the government (and numbers of states) have declined to intervene. The Allen amendment seeks to add allegations that Allen himself would be time-barred from bringing. The claims are stale by any rendering and will surely unduly delay this proceeding.

## III. CONCLUSION

For the reasons set forth above, plaintiff-relator Wilson's Motion for Leave to Amend and File a Third Amended Complaint (**document #60**) is **DENIED**.

**SO ORDERED.**

**Date: June 16, 2011**　　　　　　　　/s/ Nancy Gertner
　　　　　　　　　　　　　　　　　　**NANCY GERTNER, U.S.D.J.**