UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ex rel., MICHAEL WILSON, ) | |
| Plaintiff, ) | |
| ) | |
| v.                                    ) | C.A. No. 06-12195-MLW |
| ) | |
| BRISTOL-MYERS SQUIBB, ) | |
| INC., et al., ) | |
| Defendants ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                                    June 27, 2013

I. INTRODUCTION

    This is a qui tam suit that relator Michael Wilson brought
against defendants Bristol-Myers Squibb ("BMS"), Wilson's former
employer, and Sanofi-Aventis U.S. LLC ("Sanofi"). Wilson brought
claims against BMS and Sanofi under the False Claims Act, 31 U.S.C.
§§3729-32 (the "FCA"), and numerous state false claims statutes. In
support of those claims, Wilson alleged that defendants engaged in
the off-label marketing of certain drugs, which caused false claims
to be submitted to the federal and state governments. Wilson also
brought three claims against BMS for allegedly retaliating against
him and unlawfully terminating his employment. Those claims are
Counts Three, Five, and Six (the "employment-related claims").

    On February 12, 2013, the court allowed BMS and Sanofi's
motions to dismiss relator's claims under the FCA and state false
claims statutes concerning defendants' alleged off-label drug
marketing. On March 30, 2013, the court denied BMS's motion to
dismiss Wilson's employment-related claims. As the only remaining

claims in this case are the three employment-related claims, two of which are California state law claims and one of which is a retaliation claim under the FCA, the court ordered the parties to submit memoranda, and supplemental memoranda, concerning whether or not this case should be transferred to the United States District Court for the Central District of California, where it was originally filed.

Wilson seeks the transfer of this case to California. BMS opposes the transfer of this case. Sanofi does not take a position with respect to the appropriate venue in which to litigate the remaining employment-related claims because those claims are only alleged against BMS. However, Sanofi and BMS each request that before any transfer of this case to California the court: (1) issue an order denying Wilson's pending request to amend his Second Amended Complaint (the "SAC"); and (2) enter a partial final judgment under Federal Rule of Civil Procedure 54(b) as to the dismissed claims to avoid complications on appeal.

For the reasons stated in this Memorandum and Order, this case is being transferred to the United States District Court for the Central District of California. In addition, the court is denying Wilson's request to amend the SAC, and entering a partial final judgment under Federal Rule of Civil Procedure 54(b) as to the dismissed claims.

2

II. DISCUSSION

   A. <u>Transferring This Case to California</u>

   "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). "The burden of proof rests with the party seeking transfer," and "there is a strong presumption in favor of the plaintiff's choice of forum." <u>Coady v. Ashcraft & Gerel</u>, 223 F.3d 1, 11 (1st Cir. 2000); <u>accord</u> <u>Astro-Med, Inc. v. Nihon Kohden Am., Inc.</u>, 591 F.3d 1, 13 (1st Cir. 2009).

   One of the most important factors in considering a request to transfer venue is the convenience for the witnesses. <u>See</u> <u>Brant Point Corp. v. Poetzsch</u>, 671 F. Supp. 2, 3 (D. Mass. 1987) (Wolf, J.) (citing cases and treatise).

> In analyzing the convenience of the witnesses, the [c]ourt must consider not only the number of potential witnesses located in the transferor and transferee districts, but also the nature and quality of their testimony and whether they can be compelled to testify. Thus, [w]hen a party seeks to transfer on account of the convenience of witnesses . . ., he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.

<u>Id.</u> at 3-4 (internal quotation marks and citations omitted).

   "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." <u>Research Automation, Inc. v. Schrader-Bridgeport</u>

Intern., Inc., 626 F.3d 973, 978 (7th Cir. 2010). Factors that some courts consider in determining whether transfer is in the interest of justice include: (1) the time it will take to reach trial in each district; (2) "each court's relative familiarity with the relevant law;" (3) "the respective desirability of resolving controversies in each locale;" and (4) "the relationship of each community to the controversy." Id.; see also Brant Point, 671 F. Supp. at 5 ("[T]ransfer . . . would promote the interests of justice by allowing the North Carolina zoning procedures at issue in this case to be construed by a federal court sitting in that state, rather than by a court unfamiliar with North Carolina law."). "[T]he interest of justice is ill served by transferring a case in which the Court has already entered a preliminary injunction and made other substantive decisions." Iantosca v. Benistar Admin Serv., Inc., 765 F. Supp. 2d 79, 85 (D. Mass. 2011) (Gorton, J.).

Although some of the relevant factors weigh against transferring this case, other factors weigh in favor of transfer. On balance, it is most appropriate for the remainder of this case to be litigated in California. First, it does not appear that the convenience of the parties will be enhanced by transferring this case to California. Wilson claims that it would be more convenient to litigate this case in California, while it would be more convenient for BMS to continue litigating in Massachusetts.

Accordingly, the transfer of this case to California would simply shift the inconvenience from Wilson to BMS, which does not militate in favor of transferring this case. See Brant Point, 671 F. Supp. at 3.

Second, although there is a strong presumption in favor of relator's preference for a California forum, see Coady, 223 F.3d at 11, that presumption should be given limited weight in this case because Wilson evidently consented to litigating this case in Massachusetts. Wilson originally filed this case in the United States District Court for Central District of California, and it was subsequently transferred to this court. BMS contends, and relator does not dispute, that Wilson sought or acquiesced in the transfer of this case to Massachusetts. BMS is correct to argue that Wilson's current preference for a California forum does not merit as much deference as it would if this court were considering transferring this case away from relator's original choice of forum.

Third, as indicated earlier, with regard to the factor concerning the convenience of the non-party witnesses, "the [c]ourt must consider not only the number of potential witnesses located in the transferor and transferee districts, but also the nature and quality of their testimony and whether they can be compelled to testify." Brant Point, 671 F. Supp. at 3-4 (internal quotation marks omitted). As required, Wilson has submitted a declaration

that names certain witnesses that will be relied upon at trial and a general statement of what their testimony will address. See id. at 4. Wilson's declaration states that approximately 20 of the non-party witnesses that he or BMS will call at trial reside in or near California. See Decl. of Michael Wilson. Those witnesses include: (1) James Main, who is identified as the person who terminated Wilson's employment at BMS; (2) Tracy Ferguson, who allegedly participated in the harassment of Wilson and BMS's retaliation against him; and (3) Adolfo Shroeder, who has personal knowledge concerning BMS's practices with regard to employees who altered drug sample cards, which is allegedly the reason why BMS terminated Wilson's employment.

BMS maintains that Massachusetts is a more convenient forum for its witnesses because a number of them are located in New Jersey. BMS has not submitted an affidavit stating who those witnesses are, whether they are non-parties, and does not state what their testimony will address.

A number of the witnesses who will provide what appears to be important testimony in this case reside in or near the Central District of California. Accordingly, it would be more convenient for those witnesses if this case were transferred to California so that they would not have to travel across the country to provide their testimony.

The parties agree that the FCA grants this court the authority

6

to compel non-party witnesses to testify in Massachusetts even if those witnesses are outside of the court's subpoena power under Rule 45 of the Federal Rules of Civil Procedure. See 31 U.S.C. §3731(a) ("A subp[o]ena requiring the attendance of a witness at a trial or hearing conducted under section 3730 of this title [the FCA] may be served at any place in the United States.").

However, there is disagreement in certain district courts about whether §3731(a) creates a subpoena power that exceeds the court's subpoena authority under Rule 45, and no circuit court of appeals has interpreted §3731(a). Some district courts have interpreted §3731(a) to mean that witnesses in FCA cases will be available to testify in any judicial district. See, e.g., United States ex rel. Westrick v. Second Chance Body Armor, Inc., 771 F. Supp. 2d 42, 49 (D.D.C. 2011); United States v. Gwinn, No. 06-00267, 2008 WL 867927, at *19 (S.D. W. Va. March 31, 2008); Little v. ENI Petroleum Co., Inc., No. 06-120-M, 2007 WL 2254318, at *4 (W.D. Okla. Aug. 3, 2007). In contrast, another district court has concluded that §3731(a) only provides for the nationwide service of subpoenas in FCA cases, but does not provide for the enforcement of those subpoena. See United States ex rel. Thomas v. Siemens AG, No. 04-116, 2009 WL 1657429, at *2 (D.V.I. June 12, 2009) ("Because Section 3731 addresses service of such subpoenas and not the enforcement thereof, the Court finds that it does not supercede Fed. R. Civ. P. 45(c) nor does it preclude any witness outside the

100-mile 'zone' from moving to quash and discharge any duty to comply with such a subpoena."). Although the question of the court's subpoena power under the FCA is not resolved, the weight of the authority supports the court's power to subpoena non-party witnesses from anywhere in the United States to testify in Massachusetts in this case. That factor weighs against transferring this case to California.

Finally, it is in the interest of justice to transfer this case to California, even though some of the relevant factors weigh against transfer. This case has been pending in the District of Massachusetts for a number of years, and this court has rendered substantive decisions on defendants' motions to dismiss. Upon transfer of this case, a new judge will have to become familiar with the case, and that could delay the time it will take to reach trial. Those factors weigh against transfer. See Research Automation, Inc., 626 F.3d at 978; see also Iantosca, 765 F. Supp. 2d at 85.

On the other hand, there are various reasons why transferring this case to California is in the interest of justice. Two of the three remaining claims in this case are brought under California state law, including Count Six for wrongful termination in violation of public policy. In addition, the events that generated all of the remaining claims occurred in California. The United States District Court for the Central District of California is

presumably more familiar with California state law than this court. More significantly, California has a greater interest than Massachusetts in resolving employment and retaliation disputes that occur in California. Accordingly, it would promote the interests of justice by allowing the employment issues in this case, which occurred in California, to be adjudicated by a federal court sitting in that state. See Brant Point, 671 F. Supp. at 5; Research Automation, Inc., 626 F.3d at 978.

While some of the foregoing factors weigh against transferring this case, on balance, for the convenience of the witnesses and in the interest of justice the United States District Court for the Central District of California should adjudicate the remaining claims in this case.

B. Wilson's Request to Amend the SAC

Wilson seeks to amend the SAC pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.[1] In cases such as this one, where

---

[1] At the February 2, 2007 hearing on defendants' motions to dismiss, Wilson's counsel mentioned that Rule 15(d) of the Federal Rules of Civil Procedure might provide a proper basis for allowing relator to supplement the SAC. Rule 15(d) provides, in pertinent part, that: "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." Wilson's counsel did not contend that the standard for supplementing a pleading under Rule 15(d) is different from the standard for amending a complaint under Rule 15(a). Accordingly, the reasons for the court's denial of relator's request to amend the SAC under Rule 15(a) suffice to deny Wilson's request to supplement the SAC under Rule 15(d).

9

a plaintiff cannot amend his complaint as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). However, grounds for denying a motion to amend include "'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment.'" ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 56 (1st Cir. 2008) (quoting Foman, 371 U.S. at 182).

The court has previously denied Wilson's motion to amend the SAC and his motion for reconsideration of that denial. See June 16, 2011 Memorandum and Order; Mar. 7, 2012 Memorandum and Order. The court does not find any reason why it should now allow Wilson to amend the SAC to include those claims.

Wilson admits that a substantial number of the facts that he now seeks to add to the SAC are facts that he previously sought to plead in his proposed Third Amended Complaint (the "TAC"), which was the pleading that now-retired Judge Nancy Gertner did not allow relator to file. See Rel.'s Opp. to Defs.' Mot. to Dismiss at 37 n.50. Those proposed facts are contained in §§I-III of Exhibit O,

which is appended to Relator's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint. For the reasons stated by Judge Gertner in the June 16, 2011 Memorandum and Order denying Wilson's motion to amend the SAC, and the reasons stated in the March 7, 2012 Memorandum and Order denying relator's motion to reconsider that denial, Wilson's request to amend the SAC with the allegations contained in §§I-III of Exhibit O is being denied.

The other amendments that Wilson seeks to make to the SAC, which are contained in §§IV and V of Exhibit O, are not being allowed because of undue delay and the fact that Wilson evidently could have acquired the information in those proposed amendments prior to filing the SAC and his motion for leave to file the TAC. See Foman, 371 U.S. at 182; United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009); ACA Fin. Guar. Corp., 512 F.3d at 56; see also Gray v. St. Martin's Press, Inc., 221 F.3d 243, 253 (1st Cir. 2000) (district court did not abuse its discretion in denying a motion to amend because the plaintiff had access to the information in the proposed amendment at the outset of the litigation). Where, as here, a relator has been allowed to amend his original complaint twice, it is within the court's discretion not to grant him "a fourth chance to try to get it right." Gagne, 565 F.3d at 48.

11

When Wilson sought leave to file his proposed TAC three years ago, Judge Gertner was troubled by the delay at that point in the litigation, and stated that Wilson had not adequately explained it. See June 16, 2011 Memorandum and Order at 2, 11. Similarly, Wilson has not now adequately explained the delay in seeking to add to the SAC the allegations contained in §§IV and V of Exhibit O. Those proposed allegations generally relate to the prescription writing practices of certain doctors during 2009 and 2010, and are claimed to "consist of facts Relator has acquired through independent investigation that were neither included in his proposed Third Amended Complaint nor previously found by the Court to be jurisdictionally barred from this action." Rel.'s Opp. to Defs.' Mot. to Dismiss at 37 n.50. Wilson does not explain why the "independent investigation" that has generated those proposed allegations could not have been conducted in time to include them, or similar allegations, in the SAC, which was filed on March 11, 2009. Nor is it apparent why Wilson did not seek to include those allegations in the motion for leave to file his proposed TAC, which he filed on June 24, 2010.

The delay that concerned Judge Gertner three years ago is even more significant at this point in the litigation. Moreover, because Wilson has not persuasively explained why the proposed allegations in §§IV and V of Exhibit O could not have been discovered and included in the SAC or the proposed TAC, the court finds it is most

12

appropriate to deny Wilson the opportunity to now include those allegations in an amendment to the SAC.

C. Partial Final Judgment Under Rule 54(b)

BMS and Sanofi request that the court enter a partial final judgment as to the dismissed claims under Federal Rule of Civil Procedure 54(b) before transferring this case to California. Wilson requests the opportunity to brief the issues concerning a partial final judgment under Rule 54(b). That request is denied.

Federal Rule of Civil Procedure 54(b) governs the court's authority to enter judgment as to one or more, but less than all, claims or defendants. Rule 54(b) states, in pertinent part:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"When contemplating Rule 54(b) certification, a trial court first must ensure that the ruling underlying the proposed judgment is final." Nystedt v. Nigro, 700 F.3d 25, 29 (1st Cir. 2012); accord Spiegel v. Tr. of Tufts College, 843 F.2d 38, 42-43 (1st Cir. 1998). "To qualify as final, a ruling must 'dispose[]

completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally.'" Id. (quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 580 (1st Cir. 1994)). The requirement of finality is satisfied in this case. The February 12, 2013 Order allowed Sanofi's motion to dismiss all of the claims against it. In addition, that Order allowed BMS's motion to dismiss all of the FCA and state statutory claims against it concerning BMS's alleged off-label marketing practices. The only claims against BMS that were not dismissed are the employment-related claims, which constitute a distinctly discrete set of claims.

"In addition to finality, Rule 54(b) requires the trial court to make an express determination that there is 'no just reason for delay.'" Nystedt, 700 F.3d at 30 (quoting Fed. R. Civ. P. 54(b)); accord Spiegel, 843 F.2d at 43. This determination "entails an assessment of the litigation as a whole, and a weighing of all factors relevant to the desirability of relaxing the usual prohibition against piecemeal appellate review in the particular circumstances." Spiegel, 843 F.2d at 43. The United States Court of Appeals for the First Circuit has recognized a non-exclusive list of factors that other courts have considered in issuing a partial final judgment under Rule 54(b):

> (1) the relationship between the adjudicated and non-adjudicated claims, (2) the possibility that the need for review might be mooted by future developments in the district court, (3) the

14

> possibility that the same issue might have to be
> considered again by the reviewing court, (4) the
> presence or absence of a claim or counterclaim
> which might result in a setoff against the judgment
> which is to be made final, (5) miscellaneous
> considerations such as delay, economic and solvency
> considerations, efficiency, frivolity of competing
> claims, and expense.

Darr v. Muratore, 8 F.3d 854, 862 n.10 (1st Cir. 1993).

In this case, there is no just reason for delaying entry of a partial final judgment as to the claims that were dismissed in the February 12, 2013 Order. With respect to the relationship between the dismissed claims and the remaining claims, "[a] similarity of either legal or factual issues (or both) militates strongly against invocation of Rule 54(b)." Spiegel, 843 F.2d at 45. The factual bases for the dismissed claims are somewhat related to, but essentially distinct from, the factual bases for the employment-related claims. The dismissed claims were predominantly based on allegations about defendants' off-label marketing practices. The employment-related claims are based on Wilson's allegations that BMS retaliated against him and terminated his employment because of his complaints to BMS about some of its practices, including but not only its off-label drug promotion.

The claims that were dismissed in the February 12, 2103 Order were brought by Wilson under the FCA and analogous state law false claim statutes. One of Wilson's remaining causes of action is under the retaliation provision of the FCA, see 31 U.S.C. §3730(h), and another is brought under the California state false claims

statute's retaliation provision, see Cal. Gov. Code §12653. Accordingly, there is some overlap in the statutory schemes that govern the dismissed claims and the remaining employment-related claims. However, Wilson's remaining claims are legally distinct from the claims that were dismissed because the remaining claims are for retaliation in the employment context and not defendants' potential liability for causing false claims to be submitted to governments.

In addition, a partial final judgment under Rule 54(b) is warranted in this case in order to assure that any future litigation concerning the February 12, 2013 Order dismissing certain claims is decided based on law of the First Circuit by judges in the First Circuit. The parties in this case have spent years litigating the claims that have been dismissed under the First Circuit's jurisprudence. If the court were to transfer this case to California without entering a partial final judgment as to the dismissed federal claims, and there was further litigation of those claims, the United States District Court for the District of California and the United States Court of Appeals for the Ninth Circuit would have to apply Ninth Circuit law. See Newton v. Thomason, 22 F.3d 1455, 1460 (9th Cir. 1994) ("We therefore hold that, when reviewing federal claims, a transferee court in this circuit is bound only by our circuit's precedent. Accordingly, we will apply our law to interpret the Lanham Act claim."). With

regard to the dismissed state law claims, Wilson acknowledged that the requirements for alleging valid state law claims in Counts Four and Seven through Twenty-Nine of the SAC are the same as the requirements for alleging a valid federal law claim under the FCA. See February 13, 2013 Order, ¶3. Accordingly, the analysis concerning the law that will be applied by the transferee court with respect to the federal law claims that have been dismissed applies equally to the dismissed state law claims. For purposes of efficiency and cost, the parties in this case should not have to appeal or otherwise litigate the dismissed claims under Ninth Circuit law.

III. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Pursuant to 28 U.S.C. §1404(a), this case is TRANSFERRED to the United States District Court for the Central District of California.

2. Wilson's request for leave to amend the SAC (Docket No. 110) is DENIED.

3. A partial final judgment is certified under Rule 54(b) of the Federal Rules of Civil Procedure as to the claims that were dismissed in the February 12, 2013 Order.



UNITED STATES DISTRICT COURT

17